UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MITCHELL NOTTINGHAM,

        Plaintiff,                                    Case No. 2:25-cv-40

v.                                                                    Honorable Ray Kent

UNKNOWN VELMER et al.,

        Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.9.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

      "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, James, Nebel, Vanacker, Russell, Schroederus, and Bolton. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Velmer and Olivier: official capacity claims, Eighth Amendment claims related to the deprivation of clean clothes, legal paperwork, and a telephone and address book, and First Amendment claims. Plaintiff's Eighth Amendment claims against Defendants Velmer and Olivier related to the deprivation of Plaintiff's hearing aids from July 18, 2024, until July 26, 2024, remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director/Manager Richard D. Russell, and the following MBP staff: Property Officer Unknown Velmer, Assistant Resident Unit Supervisor Unknown Nebel, Resident Unit Manager Unknown Olivier, Assistant Deputy Warden Unknown James, Warden Sarah Schroeder, Sergeant Unknown Vanacker, Lieutenant Unknown Schroederus, and Grievance Coordinator Unknown Bolton. Defendants are sued in their official and personal capacities. (Compl., ECF No. 1, PageID.3–4.)

Plaintiff is "severely hearing impaired." (*Id.*, PageID.5.) He alleges that, on July 18, 2024, he was released from suicide observation and transferred to a segregation cell with only a bedroll, a t-shirt and shorts covered in blood, and white underwear. (*Id.*, PageID.5–6.) From July 18, 2024, until July 26, 2024, Plaintiff was denied his "allowable property," including his hearing aids, legal paperwork, phone and address book, and clean clothes. (*Id.*)

On July 18, 2024, Plaintiff asked Defendant Nebel for his hearing aids and allowable property and told Defendant Nebel that he was supposed to have his hearing aids "24/7." (*Id.*, PageID.5.) Defendant Nebel told Plaintiff that he would need to "go without" his property until the property officer brings the property to Plaintiff. (*Id.*)

On July 20, 2024, Plaintiff wrote a kite to Defendant Velmer, the property officer, stating that he needed his hearing aids and allowable property. (*Id.*) Plaintiff did not receive a response. (*Id.*)

On July 24, 2024, Plaintiff spoke with Defendant Olivier, telling her that he needed his hearing aids and property. (*Id.*) Defendant Olivier told Plaintiff that he would need to wait for the property officer to bring Plaintiff's property to him. (*Id.*)

On July 25, 2024, Plaintiff spoke with Defendants James and Schroeder and told them that he had been without his hearing aids and allowable property. (*Id.*) They both told Plaintiff that they would look into it and make sure that Plaintiff got his property that day. (*Id.*) Plaintiff received his property the following day. (*Id.*)

Plaintiff filed a grievance related to the events described in his complaint. (*Id.*, PageID.6.) Plaintiff alleges that Defendants Vanacker and Schroederus "lied," indicating that they interviewed Plaintiff concerning Plaintiff's grievance and that Plaintiff said that "it was okay now," refusing to sign the grievance. (*Id.*) Plaintiff was never interviewed regarding his grievances. (*Id.*) Plaintiff filed "multiple step 2 grievances" that were all "withheld/thrown out or just unfiled" by Defendant Bolton. (*Id.*) Plaintiff's step 3 grievance appeal was rejected based upon alleged issues with Plaintiff's step 2 grievance forms. (*Id.*)

Plaintiff claims that, without his hearing aids, he was unable to hear or communicate effectively. (*Id.*) He also alleges that, without his legal paperwork, he was "unable to work on any ongoing litigation," and without his phone and address book, he could not contact his loved ones. (*Id.*)

Plaintiff brings claims for violation of Plaintiff's First Amendment right of access to the Courts, Eighth Amendment rights concerning the deprivation of his hearing aids and property, and Fourteenth Amendment rights related to the grievance process. (ECF No. 1, PageID.7–8.) The Court will also liberally construe Plaintiff's complaint to include First Amendment claims related to the grievance process. Plaintiff seeks monetary relief. (*Id.*, PageID.9.)

5

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (ECF No. 1, PageID.3–4.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks only monetary damages. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities on which relief may be granted.

### B. Claims Against Defendant Russell

Plaintiff names Defendant Russell in the caption of his complaint and in the list of parties but does not mention Defendant Russell anywhere in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not make any factual allegations against Defendant Russell. The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Accordingly, Plaintiff's claims against Defendant Russell fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed for failure to state a claim.

Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### C. Eighth Amendment Claims

Plaintiff brings Eighth Amendment claims against Defendants Velmer, Nebel, Olivier, James, Schroeder, Vanacker, and Schroederus for depriving Plaintiff of his hearing aids and allowable property from July 18, 2024, until July 26, 2024. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010)

(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.      **Objective Prong**

As to the objective prong, Plaintiff claims that he was denied hearing aids, clean clothes, legal paperwork, and an address and telephone book. The first question before the Court on initial screening of Plaintiff's Eighth Amendment claims is whether each deprivation was "extreme," representing a condition "intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.

With respect to the denial of hearing aids, Plaintiff claims that he is severely hearing impaired and that, without his hearing aids, he is unable to effectively communicate. Plaintiff describes his hearing aids as medically necessary. (ECF No. 1, PageID.7.) The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment requires prison officials to provide

medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The Court finds that, taking Plaintiff's allegations as true as is required at this stage, the Court could infer that Plaintiff was denied the ability to hear and effectively communicate for eight days, amounting to a serious medical need, *see Estelle*, 429 U.S. at 104–05, and potentially leading to "conditions intolerable for prison confinement," *Rhodes*, 452 U.S. at 347. Therefore, the Court finds that, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged sufficient facts to satisfy the objective prong of the deliberate indifference test related to the denial of hearing aids.

As to Plaintiff's remaining claims, the Court finds that the denial of clean clothes, legal paperwork, an address and telephone book are not similarly "extreme" or resulting in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Certainly, the denial of clean clothing for an extended period, causing harm, could raise an Eighth Amendment claim. However, the denial of clean laundry and other elements of hygiene for periods of time similar to the period of time alleged by Plaintiff does not implicate the Eighth Amendment. *See Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (concluding that the denial of showers and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and

laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment). Moreover, a denial of clean clothes may constitute an Eighth Amendment violation "only when the inmate claims to have 'suffered a physical injury or a disease as a result of these conditions.'" *Acosta v. Michigan Dep't of Corr.*, No. 2:22-CV-164, 2022 WL 16757157, at *7 (W.D. Mich. Nov. 8, 2022) (quoting *Brown v. Timmerman-Cooper*, No. 2:10-cv-283, 2013 WL 430262, at *2 (S.D. Ohio Feb. 4, 2013)). Here, Plaintiff does not allege that he suffered any injury or illness because he was forced to remain in his bloody clothes for eighth days. Therefore, while perhaps uncomfortable, the denial of clean clothing for this limited time did not deprive Plaintiff of "the minimalized civil measure of life's necessities." *See Rhodes*, 452 U.S. at 347. Any Eighth Amendment claims premised upon the denial of clean clothing will be dismissed.

Likewise, Plaintiff's claims that he was denied his legal paperwork and telephone and address book for eight days fail to rise to the level of "extreme deprivation[s]" akin to the denial of "essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. As a result, the Court will also dismiss Plaintiff's Eighth Amendment claims related to the denial of Plaintiff's legal paperwork and phone and address book.

### 2. Subjective Prong

Finding that Plaintiff has sufficiently alleged facts to satisfy the objective prong of the deliberate indifference standard related to the deprivation of hearing aids, the Court must consider whether each individual Defendant was subjectively aware of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

#### a. Defendant Nebel

Plaintiff alleges that he spoke with Defendant Nebel on the day that he was released from suicide observation and transferred to a segregation cell. (ECF No. 1, PageID.5.) At that time, Plaintiff requested his hearing aids, and Defendant Nebel told Plaintiff that Plaintiff would need

to wait for Defendant Velmer, the property officer, to bring the property to Plaintiff. (*Id.*) Plaintiff's complaint does not allege any facts that would suggest that Defendant Nebel was aware that Plaintiff's property would be delayed for an extended time during that first conversation. Accordingly, Plaintiff's complaint does not plausibly suggest that Defendant Nebel was aware that Plaintiff faced an excessive risk to Plaintiff's health or safety. Plaintiff's Eighth Amendment claim against Defendant Nebel will be dismissed.

### b. Defendants Velmer and Olivier

However, the same is not true of Plaintiff's allegations against Defendants Velmer and Olivier. Plaintiff alleges that Defendant Velmer serves as the MBP Property Officer, responsible for providing prisoners with their property following transfers within the prison. Defendant Velmer did not immediately provide Plaintiff with his hearing aids. On July 20, 2024, Plaintiff wrote a kite to Defendant Velmer asking for his hearing aids; however, Defendant Velmer did not return Plaintiff's hearing aids until July 26, 2024, if at all.[2] (ECF No. 1, PageID.5.) These allegations, taken as true, are sufficient to state an Eighth Amendment claim against Defendant Velmer at this early stage of the litigation.

Likewise, on July 24, 2024, after being without his hearing aids for six days, Plaintiff spoke with Defendant Olivier and requested his hearing aids. (*Id.*, PageID.5.) Plaintiff's complaint suggests that Defendant Olivier took no action in response to Plaintiff's request, telling Plaintiff only that he would need to wait for the property officer. (*Id.*) While Plaintiff's allegations against

---

[2] Plaintiff alleges that Defendants Nebel and Olivier told Plaintiff that the property officer was responsible for providing Plaintiff with his property. (ECF No. 1, PageID.5.) While Plaintiff alleges that he finally received his property on July 26, 2024, he does not specifically allege that it was Defendant Velmer who provided the property to him.

13

Defendant Olivier are sparse, his Eighth Amendment claim against Defendant Olivier cannot be dismissed on screening.

### c.  Defendants James and Schroeder

Plaintiff alleges that he spoke with Defendants James and Schroeder on July 25, 2024, telling them that he had been without his property, including his hearing aids. (*Id.*, PageID.5.) Defendants James and Schroeder assured Plaintiff that they would look into the issue and, the following day, Plaintiff received his property. (*Id.*) While Plaintiff did not receive his property on July 25, 2024, as promised, the failure to live up to that ideal is not the standard for an Eighth Amendment claim. Ultimately, Plaintiff's complaint supports the inference that Defendants James and Schroeder acted in response to Plaintiff's request and, at the very least, were not deliberately indifferent to Plaintiff's need for his hearing aids. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants James and Schroeder.

### d.  Defendants Vanacker and Schroederus

Plaintiff does not allege that Defendants Vanacker and Schroederus were directly involved in the denial of Plaintiff's hearing aids. Instead, Plaintiff alleges that each Defendant interfered with and denied Plaintiff's grievances.

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Therefore, the Sixth Circuit has held that, where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative

14

grievance. *Id.* Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Vanacker and Schroederus.

### D.     Fourteenth Amendment Claims

Plaintiff faults Defendants Vanacker, Schroederus, and Bolton for their handling of Plaintiff's grievances. He claims that these Defendants lied, withheld, and threw out Plaintiff's grievances. (*Id.*, PageID.6.) Plaintiff also claims that he was never interviewed regarding his grievances. (*Id.*) However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the administrative grievance process, Defendants' conduct did not deprive Plaintiff of due process. The Court will dismiss Plaintiff's Fourteenth Amendment due process claims.

### E.     First Amendment Claims

Plaintiff alleges that, because he was deprived of his legal property, he was "unable to work on any ongoing litigation" and was denied "access to the courts." (ECF No. 1, PageID.6.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting

15

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff alleges only that he had "ongoing litigation." Plaintiff does not describe the nature of the litigation and has not alleged facts from which the Court can reasonably infer that Plaintiff was harmed in his ability to pursue non-frivolous direct appeals, habeas corpus applications, or civil rights claims. Accordingly, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

To the extent alleged, Plaintiff's First Amendment right to petition the government was also not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite

17

for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim against Defendants for interference with Plaintiff's access to the courts or otherwise, based upon their handling of Plaintiff's grievances and complaints.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Schroeder, James, Nebel, Vanacker, Russell, Schroederus, and Bolton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Velmer and Olivier: official capacity claims, Eighth Amendment claims related to the deprivation of clean clothes, legal paperwork, and a telephone and address book, and First Amendment claims. Plaintiff's Eighth Amendment claims against Defendants Velmer and Olivier related to the deprivation of Plaintiff's hearing aids from July 18, 2024, until July 26, 2024, remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 6, 2025                                /s/ Ray Kent
                                                                                    Ray Kent
                                                                                    United States Magistrate Judge